LODGED
CLERK, U.S. DISTRICT COURT
10/9/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: RYO DEPUTY

# UNITED STATES DISTRICT COURT
for the
Central District of California

FILED
CLERK, U.S. DISTRICT COURT
October 9, 2025
CENTRAL DISTRICT OF CALIFORNIA
BY: CLD DEPUTY

| | |
|---|---|
| United States of America<br>v.<br>FLORIN CAPALB<br><br>Defendant(s) | Case No. 2:25-mj-06313-DUTY |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  October 8, 2025  in the county of  Los Angeles  in the
 Central District  District of  California , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1325 | Improper Entry by Alien (attempt) |

This criminal complaint is based on these facts:
Please see attached affidavit.

☑ Continued on the attached sheet.

/s/ Maria Engel
*Complainant's signature*

Maria Engel, Special Agent, HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: October 9, 2025

*Judge's signature*

City and state: Los Angeles, California     Hon. Alka Sagar, U.S. Magistrate Judge
*Printed name and title*

AUSA: Rahul R.A. Hari (x6159)

## **AFFIDAVIT**

I, Maria Engel, being duly sworn, declare and state as follows:

## **I. PURPOSE OF AFFIDAVIT**

1. This affidavit is made in support of criminal complaints against, and arrest warrants for, the following individuals:

   a. ERALD ABAJCI ("ABAJCI"),
   b. SEIF ELISLEM ALI BENLAKHLEF ("BENLAKHLEF"),
   c. FLORIN CAPALB ("CAPALB"),
   d. OVIDIU-IONUT DUMITRU ("DUMITRU"),
   e. PEDRO GARCIA MONTOYA ("MONTOYA"),
   f. MARCO IGLESIAS RAMOS ("RAMOS"),
   g. VASILICA IONAT ("IONAT"),
   h. CINDY YURITZI SALGADO SANCHEZ ("SANCHEZ"),
   i. DANIEL NITA ("NITA"),
   j. JUAN DE DIOS LOPEZ CASTILLO ("CASTILLO"),
   k. JUAN JOSE RODRIGUEZ-LOPEZ ("RODRIGUEZ-LOPEZ"),
   l. MAXIMO SALDINAR GARCIA ("GARCIA"),
   m. CARLOS SANTANA ("SANTANA"),
   n. MARCO VARGAS TOVAR ("TOVAR"), and
   o. JOSE VAZQUEZ-LOPEZ ("VAZQUEZ-LOPEZ")

(collectively, "Target Subjects"), charging CASTILLO, RODRIGUEZ-LOPEZ, GARCIA, SANTANA, TOVAR, and VAZQUEZ-LOPEZ with an attempted violation of Title 8, United States Code, Section 1326(a) (Illegal Alien Entering the United States Following Deportation), and charging ABAJCI, BENLAKHLEF, CAPALB, DUMITRU,

MONTOYA, RAMOS, IONAT, SALGADO, and NITA with an attempted violation of Title 8, United States Code, Sections 1325 (Improper Entry by Alien).

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show that there is sufficient probable cause for the requested complaints and warrants and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only, and all dates are approximate.

## II. BACKGROUND

3. I am a Special Agent with the United States Department of Homeland Security "DHS", Immigration and Customs Enforcement "ICE," Homeland Security Investigations "HSI". I am a federal law enforcement officer within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C).

4. I have been employed as an HSI Special Agent ("SA") since May 2024, and am currently assigned to the HSI Los Angeles, Border Enforcement Security Taskforce Maritime group. My responsibilities include investigating violations of federal and state criminal laws, including crimes involving maritime smuggling, drug trafficking, immigration, fraud, and customs violations in the Central District of California.

5.    As an SA, I have successfully completed approximately 472 hours of instruction of the Criminal Investigator Training Program, and 536 hours of instruction of the Homeland Security Investigations Special Agent Training at the Federal Law Enforcement Training Center in Glynco, Georgia.  Before becoming an SA, I received my Bachelor of Arts degree in Behavioral Neuroscience from the University of San Diego.

### III. **STATEMENT OF PROBABLE CAUSE**

6.    Based on my review of reports, discussions with other investigators -- including from the United States Coast Guard ("USCG") and United States Border Patrol ("USBP"), and my own involvement in the investigation, I am aware of the following:

   a.    On October 8, 2025, at approximately 12:40 a.m., a USCG vessel contacted a "panga" vessel off the coast of San Clemente Island, California, an island in Los Angeles County, within the Central District of California.  USCG had been called by a United States Navy helicopter to search for a possible panga on the west side of San Clemente Island.  Annotated satellite images I reviewed show the location where USCG encountered the panga: within 10 miles of the coast of San Clemente Island and within the territorial waters of the United States.  USCG observed fuel cans on the panga which is consistent with recent smuggling trends where smugglers refuel the small vessel at sea for longer seafaring trips.

   b.    USCG discovered the fifteen Target Subjects onboard the panga.  The Target Subjects were detained and

transferred to the USCG vessel.  None of the Target Subjects claimed to be the captain of the vessel.

  c. The panga was towed to the United States Coast Guard Base Los Angeles/Long Beach, California before being seized by Air and Marine Operations Long Beach Marine Unit and photographed and documented.

  d. USCG then transported the Target Subjects and towed the panga to the United States Coast Guard Base in San Pedro, California.

  e. At approximately 3:15 a.m., after confirming none of the Target Subjects had immigration documents to be legally present in the United States, USCG transported Target Subjects to the San Clemente Border Patrol Station.

  f. USBP questioned Target Subjects on their citizenship and nationality.  All fifteen admitted to being illegally present in the United States.  USBP then placed Target Subjects under arrest.

  g. At the San Clemente Border Patrol station, each of the Target Subjects were processed for intake.  As part of processing, USBP entered the Target Subjects' fingerprints and biographical information into DHS databases to determine whether the subject had a criminal or immigration record history.  Based on my training, experience, and information obtained from law enforcement personnel involved in this investigation, I believe that the fingerprints were checked using matching tools that compare the fingerprints against known fingerprints in DHS databases.

   h. I learned that the fingerprints for CASTILLO, RODRIGUEZ-LOPEZ, GARCIA, SANTANA, TOVAR, and VAZQUEZ-LOPEZ were flagged as matching known fingerprints of individuals with prior immigration encounters. Officers also compared the names and biographical information provided by these seven with the information in the DHS databases and determined that the information matched. Based on the database information, officers determined that each of these individuals were citizens of other countries with no record of having been permitted entry to the United States.

   i. The Target Subjects were read and advised of their Miranda rights and of their consular notification rights before being interviewed by HSI SAs, including myself. During these interviews, HSI SAs asked the Target Subjects if they possessed any legal immigration documents that would allow them to lawfully remain in the United States. None of the Target Subjects said they possessed such documentation.

   j. I separately conducted my own review of DHS databases and records for each of the Target Subjects. Based on my review, I did not find any record that the Target Subjects had applied for or received permission to enter the United States.

   k. Each of the Target Subjects that agreed to an interview with HSI SAs admitted to knowing they were on the panga with the intent to come to the United States.

  7. Based on my training and experience, I know that a DHS alien file ("A-File") is a file in which immigration records are

maintained for a particular alien who was admitted to or found in the United States and each such alien is designated with a unique identifier, known as an A number. I also know that a DHS A-File usually contains photographs, fingerprints, court records of conviction, and records relating to deportation or other actions by DHS, or its predecessor agency, the Immigration and Naturalization Service ("INS"), with respect to the subject alien for whom the DHS A-File is maintained.

8. Based on my training and experience, I know that the DHS computer indices track and document each time an alien is removed, deported, or excluded from the United States by ICE, was removed, deported, or excluded by the former INS, or is granted permission to enter or re-enter the United States.

9. I, along with USBP officers, conducted a records check of DHS databases and A files and learned the following:

    a. CASTILLO appears to match to A#206-099-459. I reviewed CASTILLO's booking photograph and the photographs in the file for A#206-099-459. The photographs appear to depict the same person. On November 2, 2014, CASTILLO entered the United States at Lukeville, Arizona where ICE determined that he was in violation of section 241(a)(5) of the Immigration and Nationality Act ("INA"). CASTILLO was removed from the United States on November 18, 2014, at the San Luis, Arizona port of entry. On May 23, 2015, CASTILLO entered the United States at Lukeville, Arizona and was found to be removable as an alien who had illegally reentered the United States after having been previously removed. CASTILLO was removed from the Unted States

6

at the Nogales, Arizona port of entry on July 7, 2016. I also reviewed CASTILLO's criminal history printout, which reflects that CASTILLO was previously convicted for transporting or selling marijuana in the United States District Court, Southern District of Arizona, on or about July 8, 2015.

   b. RODRIGUEZ LOPEZ appears to match to A#215-826-626. I reviewed RODRIGUEZ-LOPEZ's booking photograph and the photographs in the file for A#215-826-626. The photographs appear to depict the same person. On September 25, 2018, RODRIGUEZ LOPEZ illegally entered the United States at or near Otay Mesa, California and was not inspected by an Immigration Officer. On January 31, 2019, an immigration judge ordered RODRIGUEZ-LOPEZ removed pursuant to section 235 of the INA. On February 4, 2019, RODRIGUEZ-LOPEZ was removed from the United States. On August 10, 2025, ICE officers encountered RODRIGUEZ-Lopez in Cheyenne, Wyoming. On August 27, 2025, RODRIGUEZ-LOPEZ was removed through the Nogales, Arizona port of entry.

   c. GARCIA appears to match to A#221-286-450. I have reviewed GARCIA's booking photograph and the photographs in the file for A#221-286-450. The photographs appear to depict the same person. On June 13, 2025, immigration officers encountered GARCIA found him to be inadmissible to the United States under section (7)(A)(i)(I) of the INA. GARCIA was removed from the United States on July 1, 2025. I also reviewed GARCIA's criminal history printout, which reflects that GARCIA was previously convicted of drug trafficking and was sentenced to 90 days in jail on July 22, 1992.

   d. SANTANA appears to match A#241-679-170. I have reviewed SANTANA's booking photograph and the photographs in the file for A#241-679-170. The photographs appear to depict the same person. On June 22, 2022, SANTANA illegally entered the United States at or near San Ysidro, California and was not inspected by an Immigration Officer. On June 23, 2022, SANTANA was removed from the United States at the San Ysidro, California port of entry. On August 21, 2024, SANTANA was encountered by immigration officers found to be inadmissible in the United States. SANTANA was ordered removed under section 235 of the INA and removed that same date.

   e. TOVAR appears to match to A#078-538-473. I reviewed TOVAR's booking photograph and the photographs in the file for A#078-538-473. The photographs appear to depict the same person. On June 17, 2000, TOVAR applied for admission into the United States with counterfeit immigration forms and was found to be inadmissible to the United States under section 212(a)(6)(C)(i) of the INA. He was removed on June 18, 2000 at the San Ysidro, California port of entry.

   f. VAZQUEZ-LOPEZ appears to match to A#213-205-947. I reviewed VAZQUEZ-LOPEZ's booking photograph and the photographs in the file for A#213-205-947. The photographs appear to depict the same person. On August 21, 2024, VAZQUEZ-LOPEZ illegally entered the United States at or near Otay Mesa, California and was not inspected by an immigration officer. VAZQUEZ-LOPEZ was found to be subject to removal under INA section 212 (7)(A)(i)(I). On September 18, 2024 VAZQUEZ-LOPEZ

was removed from the United States at the San Ysidro, California port of entry.

## IV. CONCLUSION

10. For the reasons described above, there is probable cause to believe that CASTILLO, RODRIGUEZ-LOPEZ, GARCIA, SANTANA, TOVAR, and VAZQUEZ-LOPEZ each attempted a violation of Title 8, United States Code, Section 1326(a) (Illegal Alien Entering in the United States Following Removal).

11. For the reasons described above, there is probable cause to believe that ABAJCI, BENLAKHLEF, CAPALB, DUMITRU, MONTOYA, RAMOS, IONAT, SALGADO, and NITA each attempted a violation of Title 8, United States Code, Section 1325 (Improper Entry by Alien).

/s/ Maria Engel
MARIA ENGEL, Special Agent
Department of Homeland Security

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 9th day of October 2025.

HONORABLE ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE